8 F.3d 27
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jean HSU; Kenneth Hsu; Terabyte International, Inc.,
Plaintiffs-Appellants,
v.
INTEL CORPORATION; Thomas R. Lavelle, Defendants-Appellees.
TERABYTE INTERNATIONAL, INC.; Jean Hsu; Kenneth Hsu; R.
Joseph Trojan, Plaintiffs-Appellants,
v.
INTEL CORPORATION; Thomas R. Lavelle; Irving Rappaport,
Defendants-Appellees.
Jean HSU; Terabyte International, Inc.; Kenneth Hsu,
Plaintiffs-Appellants,
v.
INTEL CORPORATION; Thomas R. Lavelle, Defendants-Appellees.
 Nos. 92-56137, 92-56405 and 92-56522.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 2, 1993.
Decided Sept. 17, 1993.
 
 Before: NOONAN, FERNANDEZ and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Plaintiffs, Kenneth and Jean Hsu and their corporation, Terabyte International, Inc. (collectively "Terabyte"), appeal the entry of summary judgment denying their claims against defendants, Intel Corporation and Thomas R. Lavelle. Terabyte's counsel, R. Joseph Trojan, appeals the imposition of Rule 11 sanctions against him. We affirm the entry of summary judgment on all claims, but reverse and remand the award of sanctions for reconsideration.
 
 BACKGROUND FACTS
 
 3
 Intel's private investigator bought counterfeit Intel computer chips from Terabyte on six occasions over a seven-month period. On February 21, 1991, Intel filed a trademark infringement action against Terabyte and obtained an ex parte seizure order. After trial in January 1992, Terabyte was found liable for willful trademark infringement.
 
 
 4
 On November 15, 1991, Terabyte filed this action against Intel and Thomas R. Lavelle, Intel's in house counsel, asserting claims for wrongful seizure, civil rights violations, and unfair competition. The district court granted summary judgment for Intel on all claims, and imposed sanctions against Trojan pursuant to Fed.R.Civ.P. 11.
 
 DISCUSSION
 
 5
 I. "Wrongful Seizure" Claim; Collateral Estoppel
 
 
 6
 On February 21, 1991, Intel obtained an ex parte order authorizing the seizure of counterfeit goods from Terabyte. The order was executed by federal marshals on February 26 and a post-seizure hearing was held on March 4, pursuant to 15 U.S.C. § 1116(d)(10)(A). Terabyte appeared at the hearing with counsel, but it did not contest the seizure. The order was confirmed.
 
 
 7
 In this action, Terabyte claims that the seizure order was obtained in bad faith and in violation of 15 U.S.C. § 1116(d)(4). The district court held that the claim was barred by collateral estoppel.
 
 
 8
 "Collateral estoppel, or issue preclusion, bars the relitigation of issues actually adjudicated in previous litigation between the same parties." Clark v. Bear Stearns & Co., Inc., 966 F.2d 1318, 1320 (9th Cir.1992). The issue must be identical to the one asserted in the prior litigation, must have been actually litigated, and must have been necessary to the prior judgment. Id. So long as Terabyte had a full and fair opportunity to litigate, collateral estoppel applies, although Terabyte failed to submit any evidence. See Peck v. Commissioner, 904 F.2d 525, 530 (9th Cir.1990).
 
 
 9
 The question raised by Terabyte's wrongful seizure claim is identical to that decided in the post-seizure hearing. The purpose of the hearing was to determine whether the seizure order was supported by the evidence and the law. See 15 U.S.C. § 1116(d)(10)(A). The district court necessarily decided that the evidence satisfied all of the statutory requirements for an ex parte order. At the time the district court entered summary judgment in this action, final judgment had been entered in the infringement action. Terabyte did not appeal the order confirming the seizure. The confirmation order was therefore sufficiently final for purposes of issue preclusion. See 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4432 at 299 (1981).
 
 
 10
 Terabyte claims that it did not have a full and fair opportunity to contest the seizure order because it did not receive Intel's papers until the morning of the hearing. Terabyte received a copy of the order, supporting memoranda and evidence at the time of the seizure. The order required Terabyte to serve opposing papers and affidavits by March 1. Terabyte was at the hearing but did not suggest that it needed additional time. Hsu's declaration that he did not know of the hearing until he received Intel's supplementary papers on March 4 is insufficient to create a genuine issue as to whether Terabyte had a full and fair opportunity to litigate the seizure order. Terabyte did not contest the order then and is precluded from doing so now.
 
 II. Constitutional Claims
 
 11
 Terabyte alleged that Intel failed to inform the court of the statutory requirements for an ex parte seizure order, failed to submit evidence sufficient to support an order, and engaged in a pattern of obtaining seizure orders against minority businesses, in violation of the Fifth and Fourteenth Amendments. Construing the complaint as a Bivens claim, the failure to allege federal governmental action is fatal to the claim. See Vincent v. Trend W. Technical Corp., 828 F.2d 563, 567 (9th Cir.1987). To allege governmental action, plaintiff must show that: (1) the deprivation was caused by the exercise of some right or privilege created by the government, and (2) the party charged with the deprivation must fairly be said to be a governmental actor. Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937, 102 S.Ct. 2744, 2753-54, 73 L.Ed.2d 482 (1982).[1] Intel concedes that it satisfied the second prong of Lugar in the sense that it needed the aid of federal officials to obtain and execute the seizure order. The complaint fails the first prong of Lugar, however, because it alleges that Intel obtained the seizure order in violation of the federal statute. "[P]rivate misuse of a [federal] statute does not describe conduct that can be attributed to the [government]." Id. at 941, 102 S.Ct. at 2756; see also Collins v. Womancare, 878 F.2d 1145, 1150-56 (9th Cir.1989) (no state action where plaintiffs alleged that private party violated state statute in making citizen's arrest and defendants did not act jointly with police), cert. denied, 493 U.S. 1056, 110 S.Ct. 865, 107 L.Ed.2d 949 (1990). Summary judgment was also proper as to the Fourteenth Amendment claim because Terabyte did not, and could not under the facts, allege state action.
 
 
 12
 Moreover, Terabyte did not produce any evidence of a constitutional violation. Terabyte is precluded from asserting that the seizure order was invalid in order to prove a due process violation. See Matthews v. Macanas, 990 F.2d 467, 468 (9th Cir.1993). As discussed below, Terabyte also failed to produce evidence that Intel engaged in discriminatory conduct.
 
 III. Section 1981 Claim
 
 13
 To prove a violation of 42 U.S.C. § 1981, plaintiff must prove racially discriminatory intent. E.g., Domingo v. New England Fish Co., 727 F.2d 1429, 1438 (9th Cir.), modified, 742 F.2d 520 (1984). However, governmental action is not an element. 42 U.S.C. § 1981(c). The district court granted summary judgment because there was no evidence of discriminatory intent or of disparate treatment of Terabyte based on race.
 
 
 14
 In opposing summary judgment, Terabyte submitted the declaration of Hsu, who stated that he was familiar with two Asian-owned businesses and that Intel had four distributors in Southern California which were white-managed companies. Terabyte submitted copies of Intel's applications for seizure orders against the two Asian-owned businesses. Trojan also made statements regarding Intel's practice of obtaining seizure orders and the racial composition of its distribution chain, but those were not based on personal knowledge. See, e.g., United States ex rel. Conveyor Rental & Sales Co. v. Aetna Casualty & Sur. Co., 981 F.2d 448, 454 & n. 26 (9th Cir.1992).
 
 
 15
 All of Terabyte's evidence is conclusory and fails to state specific facts. See Shane v. Greyhound Lines, Inc., 868 F.2d 1057, 1061 (9th Cir.1989). No business, other than AC/DC and Intracom, is specifically named. Terabyte does not attempt to place its "facts" in context. Taken at its best, the evidence was simply insufficient to allow a jury to find disparate treatment and discriminatory intent. See Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471-74 (9th Cir.1991); Sengupta v. Morrison-Knudsen Co., Inc., 804 F.2d 1072, 1074-76 (9th Cir.1986).
 
 
 16
 Moreover, Terabyte has not identified the § 1981 right of which Terabyte was allegedly deprived by Intel. Surely, it has no right to engage in trademark violations, and the most Intel has done is employ legal process in order to prevent and obtain reparations for Terabyte's wrongdoing. The district court properly entered summary judgment on the § 1981 claim.[2]
 
 IV. Sanctions
 A. Basis for Sanctions
 
 17
 The district court must apply an objective standard in determining whether Trojan made a reasonable inquiry, under all the circumstances of the case, into the legal and factual basis for the claims. Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1362, 1364 (9th Cir.1991) (en banc). The existence of one nonfrivolous claim will not preclude the imposition of sanctions for frivolous claims. Id. The district court apparently concluded that the entire complaint was frivolous and awarded all of Intel's attorney fees.
 
 
 18
 No competent lawyer could have reasonably researched the constitutional claims and failed to learn that governmental action was a necessary element. See Lugar, 457 U.S. at 924, 102 S.Ct. at 2747; Price v. State of Hawaii, 939 F.2d 702, 709 (9th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1479, 117 L.Ed.2d 622 (1992). This claim was clearly frivolous.
 
 
 19
 Trojan's factual inquiry regarding the § 1981 claim was limited to what he discovered in the infringement action. It was seriously flawed. Moreover, his legal research was incomplete. Trojan failed to identify or allege a right listed in § 1981 of which Terabyte was deprived. Thus, there is no abuse of discretion in the district court's conclusion that this claim was frivolous.
 
 
 20
 Trojan researched the elements of a wrongful seizure claim, but did not consider whether Terabyte was estopped from litigating that claim. Sanctions may be imposed for filing a complaint which is barred by res judicata. See In re Grantham Bros., 922 F.2d 1438, 1442 (9th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 94, 116 L.Ed.2d 66 (1991); Huettig & Schromm, Inc. v. Landscape Contractors Council, 790 F.2d 1421, 1427 (9th Cir.1986). However, the position that a wrongful seizure claim includes a seizure order which was wrongfully obtained is based on a good faith argument for the extension of existing law. See Fed.R.Civ.P. 11. Moreover, an argument could have been made that collateral estoppel did not apply at the time the complaint was filed, even though it did at the time summary judgment was entered. Thus, this claim was not frivolous when filed.
 
 
 21
 The district court also found that Trojan filed the action for the improper purposes of harassing and retaliating against the individual defendants, and to improperly pressure a settlement of the infringement action. However, a nonfrivolous complaint cannot be sanctioned, even though the complaint may have been filed for an improper purpose. Townsend, 929 F.2d at 1362. Therefore, sanctions may not be imposed on the wrongful seizure claim even if Trojan did admit that he filed it for an improper purpose.
 
 
 22
 The sanction order is therefore reversed and remanded so that the district court can redetermine the portion of the expenses which flowed from the two frivolous claims. See Townsend, 929 F.2d at 1367. When sanctions are based on attorney fees, the district court must differentiate between fees incurred to defend frivolous claims and fees unrelated to the sanctioned conduct. Lockary v. Kayfetz, 974 F.2d 1166, 1178 (9th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 2397, --- L.Ed.2d ---- (1993).
 
 B. Amount of Sanctions
 
 23
 The amount of sanctions must be consistent with the purpose of Rule 11, which is to deter the filing of frivolous papers. In re Yagman, 796 F.2d 1165, 1183 (9th Cir.), amended, 803 F.2d 1085 (1986), cert. denied, 484 U.S. 963, 108 S.Ct. 450, 98 L.Ed.2d 390 (1987). In addition, the district court must consider whether the party seeking sanctions mitigated its expenses or engaged in misconduct itself which contributed to the protraction of the lawsuit, and whether counsel is able to pay the sanction. Yagman, 796 F.2d at 1185. "[W]hen we are not certain of the district court's reasoning, or when we cannot discern whether the district court considered the relevant factors, we must remand." See Townsend, 929 F.2d at 1366.
 
 
 24
 Intel submitted a summary of the work performed, hours spent, and hourly rates charged by each attorney and legal assistant who worked on the case. Intel also submitted an expert opinion that the hours and fees were reasonable. The district court awarded the entire amount claimed by Intel, $190,276, without further explanation. It made no findings.
 
 
 25
 Trojan objected to the summary as inadequate to support a finding of reasonableness, and requested production of the time records and time to review them. He was not given those. Intel stated that it deducted $33,266 for duplicative time, but Trojan was unable to verify that representation or determine if any of the work was unnecessary. Even if the district court, based on its experience and judgment, could have determined that $190,276 was a reasonable amount, Trojan should have had an opportunity to review the time records so that he could properly frame any objection to the amount of fees. See Fed.R.Evid. 1006.
 
 
 26
 The district court apparently decided that Trojan was liable for all fees and expenses which flowed from the filing of the complaint and awarded the entire amount claimed by Intel, $190,276. It does not appear from the record that the district court considered whether Intel's fees were reasonably necessary to resist the complaint. It commented neither on hours spent nor on rates charged. Nor does the record reflect that the district court considered Trojan's ability to pay $190,000 in sanctions. Because the district court did not consider the relevant factors set forth in Yagman, the amount of sanctions imposed constitutes an abuse of discretion. All in all it is far from obvious to us that over one hundred ninety thousand dollars had to be spent to defend this rather uncomplicated action through the summary judgment stage, nor is it obvious that a sanction of this magnitude should be placed on Trojan. Of course, what is not obvious to us might be obvious to those who sit in trial courts on a day-to-day basis, but that only underscores the need to make findings in this sensitive area.
 
 
 27
 Accordingly, the award of sanctions must be reversed. Fees attributable to defending the wrongful seizure claim may not be assessed as sanctions. In addition, Intel's attorney time records must be made available to Trojan so that he can properly frame any objection to the amount of fees. See Fed.R.Evid. 1006. Moreover, findings and conclusions must be made with sufficient particularity to allow review.
 
 C. Costs on Appeal
 
 28
 An appeal is frivolous when the result is obvious and the arguments are wholly without merit. E.g., Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 653 (9th Cir.1988). Terabyte's arguments were not successful, but the result was not obvious. Trojan prevailed with respect to the amount of sanctions imposed; therefore his appeal was not frivolous. Intel's request for sanctions pursuant to Fed.R.App.P. 38 is therefore denied.
 
 
 29
 The entry of summary judgment is AFFIRMED. The award of sanctions is REVERSED and REMANDED for reconsideration.
 
 
 30
 KLEINFELD, Circuit Judge, concurring in part and dissenting in part:
 
 
 31
 I concur in the dismissal of the Hsus' claims-on the merits, and all other aspects of the opinion, except for the affirmance of Rule 11 sanctions. From that portion of the disposition, I respectfully dissent.
 
 
 32
 Trojan knew that Intel had effected pre-seizure hearings on Asian-owned businesses, but not on a white-owned business which Intel knew also distributed counterfeit chips. Intel concedes in its brief that it "is a 'state actor.' " A lawyer could, based on these facts, conclude that his clients had a colorable claim for application or "extension, modification, or reversal of existing law." Fed.R.Civ.P. 11. For this claim, he could not expect to have much more factual support until he engaged in discovery.
 
 
 33
 The wrongful seizure claim was, as we unanimously conclude, not sanctionable. Thus the Hsus had either a nonsanctionable claim combined with a sanctionable claim, or, if my view of the section 1981 claim is correct, an entirely nonsanctionable complaint. Of course, if none of the claims are sanctionable, then even an improper motive could not give rise to Rule 11 sanctions.
 
 
 34
 Even if the section 1981 claim were, by itself, sanctionable, I think Rule 11 sanctions were an abuse of discretion. True, there may be sanctionable cases which include frivolous and non-frivolous claims. Townsend v. Holman Consulting Corp., 929 F.2d 1358 (9th Cir.1990) (en banc). But Rule 11 is reserved for "the rare and exceptional case." Lockary v. Kayfetz, 974 F.2d 1166, 1172 (9th Cir.1992). There is nothing rare or exceptional about a defective claim in an otherwise appropriate complaint--such claims are commonly filtered out early in lawsuits by 12(b)(6) motions.
 
 
 35
 Mr. Trojan represented clients who may have been more victim than perpetrator. They bought and resold counterfeit chips, but may not have known they were counterfeit. He represented them zealously, as his duty required. Based on what he reasonably and perhaps correctly saw as Intel's violation of the federal seizure law, he sued Intel for what he reasonably perceived to be its heavy handed bullying of his small and vulnerable client. Based on what he reasonably saw as racial discrimination (because he knew Intel knew that the white-owned business sold counterfeit chips even to the Hsus, yet Intel left the white-owned business alone while pursuing the surrounding Asian proprietors), he attempted to formulate the racial aspect of the bullying as additional counts in his complaint. Though he was incorrect, Mr. Trojan's complaint, considering his limited factual knowledge and broad duties to his clients, does not seem to me to be sanctionable. This complaint was not the kind of extortionate or reckless conduct Rule 11 was meant to punish.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The same principles apply in determining the existence of state action or federal governmental action. See Schowengerdt v. General Dynamics Corp., 823 F.2d 1328, 1338 & n. 17 (9th Cir.1987)
 
 
 [2]
 Terabyte also alleged that Intel's practice of obtaining ex parte seizure orders against Asian-owned businesses was an unfair business practice under the California Business & Professions Code and common law. The district court entered judgment on these claims because they were based on the constitutional and § 1981 claims. Terabyte admits that the unfair competition claims fall with the other claims