In re Marjorie A. GIORDANO,
and Richard E. Hamm,
Jr., Debtors.

Nancy KOWALSKI–SCHMIDT, Joanne K. Curtis, and Peter J. Wirs, Appellants,

v.

Daniel E. FORSCH, Chapter
7 Trustee, Appellee.

BAP No. WW–96–1558–RyRoJ.
Bankruptcy No. 94–03937.
Adversary No. 96–01510.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Submitted June 25, 1997.

Decided Aug. 15, 1997.

Nancy Kowalski–Schmidt, Hicksville, NY, Joanne K. Curtis, Anctam, NY, Peter J. Wirs, Emigsville, PA, pro se.

Daniel E. Forsch, Seattle, WA, Chapter 7 Trustee.

Before: RYAN, ROBLES,[1] and JONES, Bankruptcy Judges.

## OPINION

RYAN, Bankruptcy Judge.

Plaintiffs Nancy Kowalski–Schmidt, Joanne K. Curtis, and Peter J. Wirs (collectively "Plaintiffs") filed a complaint (the "Gross Negligence Complaint") against chapter 7 trustee Daniel E. Forsch ("Trustee") alleging gross negligence by the trustee in administering the estate of Debtors Marjorie A. Giordano and Richard E. Hamm, Jr. ("Debtors"). Trustee filed a motion to dismiss the Gross Negligence Complaint (the "Dismissal Motion") along with a request for sanctions (the "Sanctions Request"). The bankruptcy court granted the Dismissal Motion and sanctioned Plaintiffs. Plaintiffs appealed. We AFFIRM the bankruptcy court's order.

## I. FACTS

This case involves a fairly complex fact pattern that overlaps with several other appeals that have been resolved by the Panel. Debtors owned some real property (the "Property") in Seattle consisting of four adjoining parcels where they planned to build a bed and breakfast. Sometime prepetition, Debtors obtained a loan from CLS Mortgage,

Inc. ("CLS") for $384,000 (the "CLS Loan"). In exchange for the CLS Loan, CLS received a first deed of trust on two of Debtors' parcels.

Also prepetition, in September of 1992, Debtors solicited an unsecured loan from Plaintiff Kowalski–Schmidt for $51,000. Additionally, Debtors received an unsecured loan[2] from Plaintiff Curtis for $20,000.[3] During this same time period, Plaintiff Wirs became an alleged assignee of various claims against Debtors.[4]

Debtors eventually opened their bed and breakfast, but soon encountered severe financial problems. After Debtors defaulted on several of their loan payments, CLS initiated foreclosure proceedings in state court.

On May 12, 1994, just prior to a pending foreclosure of the Property, Debtors, in *pro se*, filed their chapter 11 bankruptcy petition.[5] Postpetition, the CLS Loan was assigned to Opportunity Management, Inc. ("OMI"). OMI eventually received relief from the stay from the bankruptcy court to continue with its foreclosure sale.

On November 4, 1994, the bankruptcy court entered an order requiring Debtors to file a plan by January 21, 1995. On January 13, 1995, Debtors filed a plan of reorganization with a disclosure statement. However, Debtors did not take any action before the bankruptcy court to confirm their plan.

On March 31, 1995, the U.S. Trustee filed a motion to convert or dismiss Debtors' chapter 11 case (the "Conversion Motion"). The bankruptcy court[6] converted Debtors case to

---

1. Honorable Ernest M. Robles, Bankruptcy Judge for the Central District of California, sitting by designation.

2. Plaintiffs allege that they attempted to secure these loans with a lien by using pre-printed deeds of trust forms, but admit that they failed to perfect these alleged deeds. There is no dispute between the parties that both Plaintiff Kowalski–Schmidt and Plaintiff Curtis are now unsecured creditors.

3. Plaintiff Kowalski–Smith and Plaintiff Curtis are the sisters of Debtor Giordano.

4. Trustee asserts that all alleged claims held by Plaintiff Wirs as assignee have been denied by the bankruptcy court.

5. The case was originally assigned to Judge Steiner. The bankruptcy court strongly recommended that Debtors obtain counsel after one of the initial hearings. Debtors eventually hired James A. Santucci. Mr. Santucci terminated his representation of Debtors shortly after they moved to upstate New York.

6. Just prior to filing the Conversion Motion, Debtors filed a motion to disqualify Judge Steiner and transfer the case to another judge. While the Conversion Motion was pending, Judge Steiner granted Debtors' disqualification motion. Debtors' case was transferred to Judge Overstreet. Judge Overstreet heard the Conversion Motion.

a chapter 7 on August 4, 1995.[7] Trustee was appointed to administer Debtors' chapter 7 estate.[8]

On May 12, 1995, prior to the conversion, Debtors filed a complaint (the "CLS Complaint") against CLS alleging among other things that the CLS Loan was usurious and in violation of various consumer protection laws. Debtors also alleged that CLS committed fraud by inducing Debtors to take out the loan so that CLS could deliberately foreclose on the Property. After the conversion, Trustee inherited this action.

Trustee eventually determined that it was in the best interest of the estate to settle the CLS Complaint. Trustee and CLS agreed on a Settlement which provided that CLS would pay the estate $20,000 (the "CLS Settlement"). On January 23, 1996, Trustee filed a detailed report in support of the CLS Settlement. Debtors and Plaintiffs filed numerous papers that opposed the CLS Settlement;[9] however, on February 16, 1996, the bankruptcy court approved the CLS Settlement. Debtors appealed from the bankruptcy court's order approving the Settlement. In a separate disposition issued in conjunction with this opinion, we dismiss Debtors' appeal because they lacked standing to appeal the CLS Settlement.

Also prior to approval of the Conversion Motion, Debtors filed a complaint (the "Santucci Complaint") against their former bankruptcy attorney, Mr. Santucci. After submitting a detailed report to the bankruptcy court, Trustee settled this claim as well (the "Santucci Settlement"). The Santucci Settlement was approved by the bankruptcy court over Debtors' and Plaintiffs' objections. Debtors also appealed the Santucci Settlement. We issued a memorandum decision affirming the bankruptcy court's order approving the Santucci Settlement.[10]

Plaintiffs filed with the bankruptcy court an application to remove and replace Trustee shortly after the two settlements were negotiated. Plaintiffs alleged that Trustee had deceived the court and the estate. On February 21, 1996, the court denied this application noting that it did not find any evidence supporting Plaintiffs' accusations of Trustee's misconduct or deceit to the court.

On February 12, 1996, after both the CLS Settlement and the Santucci Settlement were approved by the bankruptcy court, Plaintiffs filed the Gross Negligence Complaint. In the Gross Negligence Complaint, Plaintiffs alleged that Trustee breached his fiduciary duty to Plaintiffs and all creditors of Debtors' estate. Plaintiffs accused Trustee of gross mismanagement and ineptitude in his administration of the estate.

All the specific allegations in the Gross Negligence Complaint addressed Trustee's handling of the Santucci Settlement and the CLS Settlement. For example, Plaintiffs stated:

> Plaintiffs allege that upon information and belief that Defendant Forsch negligently, improperly, and unskillfully did fail to properly preserve and maximize the assets of the Defendant Estate by and through his failure to properly research and investigate the facts and law of the Defendant Estate's pending claims in the Santucci Complaint and the CLS Complaint by failing to substantively interview the Plaintiffs, their former legal counsel, or any other claimholder of Defendant Estate who were in possession of knowledge and evidence that would support and sustain the Defendant Estate's claims.

Complaint Against Trustee filed in Bankruptcy Court on February 12, 1996 ¶ 42.

---

**7.** Debtors filed a separate appeal, BAP No. WW–95–1941–MeHaRy, challenging the bankruptcy court's order converting this case. We have already issued a memorandum decision affirming the bankruptcy court's order. *See* Memorandum Decision filed June 2, 1997 (BAP No. WW–95–1941–MeHaRy).

**8.** By the time Debtors' case had been converted, Debtors had moved to upstate New York and no longer maintained a residence in Washington.

**9.** None of the documents were actually labeled an opposition; however, each one asked the court to not approve the CLS Settlement.

**10.** *See* Memorandum Decision filed June 2, 1997 (BAP No. WW–96–1057–MeHaRy).

On March 4, 1996, Trustee filed his answer to the Gross Negligence Complaint. On April 3, 1996, Trustee filed the Dismissal Motion with the Sanctions Request.[11] Trustee argued that the Gross Negligence Complaint should be dismissed for two reasons. First, Trustee argued that he was protected under the doctrine of derived judicial immunity. Second, Trustee asserted that Plaintiffs were collaterally estopped from bringing the Gross Negligence Complaint.

Also on April '22, 1996, Plaintiffs filed a cross-motion for summary judgment on the Gross Negligence Complaint (the "Cross-Motion"). On April 26, 1996, the bankruptcy court held a hearing on the pending summary judgment motions. At that hearing, the bankruptcy court granted the Dismissal Motion and Sanctions Request. The bankruptcy court ruled that Trustee was protected by the derived judicial immunity doctrine and that Plaintiffs were barred from pursuing the Gross Negligence Complaint under *res judicata* and collateral estoppel principles. The bankruptcy court also denied the Cross-Motion. On May 7, 1996, the bankruptcy court entered its order.

On May 17, 1996, Plaintiffs filed a motion for reconsideration (the "Reconsideration Motion"). On May 20, 1996, the bankruptcy court entered an order denying the Reconsideration Motion. Plaintiffs timely appealed the bankruptcy court's order denying reconsideration on May 30, 1996.[12]

## II. ISSUES ON APPEAL

1. Whether the bankruptcy court erred in granting the Dismissal Motion.

2. Whether the bankruptcy court erred in granting the Sanctions Request.

## III. STANDARD OF REVIEW

We review a grant of summary judgment *de novo*. *Bank of Los Angeles v. Official PACA Creditors' Comm. (In re Southland + Keystone)*, 132 B.R. 632, 637 (9th Cir. BAP 1991). In determining whether there are any genuine issues of material fact and whether the bankruptcy court applied the relevant substantive law, we must view the evidence in a light most favorable to the nonmoving party. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir.1993); *Hughes v. United States*, 953 F.2d 531, 541 (9th Cir. 1992).

The party moving for summary judgment must show by the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment **as a matter of law**." *Hansen*, 7 F.3d at 138 (quoting Fed.R.Civ.P. 56(c)) (emphasis added); *see also Hughes*, 953 F.2d at 541. "Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or by the depositions, answers to interrogatories, and admissions on file, come forth with specific facts to show that a genuine issue of material fact exists." *National Motor Freight Traffic Ass'n v. Superior Fast Freight (In re Superior Fast Freight)*, 202 B.R. 485, 487–88 (9th Cir. BAP 1996) (quoting *Hansen*, 7 F.3d at 138); *see also* Fed. R.Civ.P. 56(c). The nonmoving party must do more than show there is some metaphysical doubt as to a material fact. *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1050 (9th Cir.1995); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,

---

**11.** Although labeled a motion to dismiss, Trustee, Plaintiffs, and the bankruptcy court treated the Dismissal Motion as a motion for summary judgment. This was necessary because Trustee had submitted affidavits and several other documents with the Dismissal Motion. *See, e.g., Jacobson v. AEG Capital Corp.*, 50 F.3d 1493, 1496 (9th Cir. 1995) ("If matters outside the pleadings are submitted, the motion to dismiss ... is treated as one for summary judgment ...").

**12.** Plaintiffs' appeal is timely because a motion for reconsideration addressing the substantive

merits of the underlying order filed within 10 days of the order tolls the timing of the filing of the notice of appeal. Additionally, Plaintiffs timely filed their notice of appeal within 10 days of the entry of the order denying the Reconsideration Motion; therefore, the order granting the Dismissal Motion and the order denying the Reconsideration Motion are properly before us. *See Nunez v. Nunez (In re Nunez)*, 196 B.R. 150, 156 (9th Cir. BAP 1996); *Rettig v. Peters (In re*

586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

All aspects of a bankruptcy court's award of sanctions are reviewed for an abuse of discretion. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2460–61, 110 L.Ed.2d 359 (1990); *Wolkowitz v. Shearson Lehman Brothers, Inc. (In re Weisberg),* 193 B.R. 916, 921 (9th Cir. BAP 1996). The bankruptcy court is given wide discretion in determining the amount of sanctions to award. *Walter v. Sunwest Bank (In re Walter),* 83 B.R. 14, 17 (9th Cir. BAP 1988). The bankruptcy court's factual determinations stand unless those determinations are clearly erroneous. *Blake, Barnett, Milman & Bell, Inc. v. Chalmers (In re Villa Madrid),* 110 B.R. 919, 922 (9th Cir. BAP 1990); *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 828 (9th Cir.1986).

## IV. DISCUSSION

### A. Wirs Lacks Standing To Pursue This Appeal As It Relates To The Granting Of The Dismissal Motion.

 As a preliminary matter, Trustee contends that Wirs lacks standing to pursue this appeal.[13] We agree with Trustee that Wirs lacks standing to pursue any appeal of the bankruptcy court order granting the Dismissal Motion. However, Wirs does have standing to appeal the Sanctions Request, because he has a direct pecuniary interest in the outcome of that portion of this appeal.

Wirs is a paralegal who asserts that he is the assignee of certain claims against Debtors. Plaintiffs' brief is extremely vague about when these assignments occurred and under what circumstances; however, Plaintiffs argue that Wirs has acquired standing by essentially stepping into the shoes of his assignors who were creditors of Debtors' estate. The problem with this argument is that Wirs' alleged claims have been denied by the bankruptcy court.[14] Therefore, Wirs

*Peters),* 191 B.R. 411, 418–19 (9th Cir. BAP 1996).

13. *See supra* note 4.

14. In their extensive papers, Plaintiffs do not disagree with or counter this assertion by the Trustee.

is not a creditor of Debtors and does not have standing to pursue any appeal of the bankruptcy court's order relating to the Dismissal Motion.

The Ninth Circuit has adopted the "aggrieved person" test for evaluating whether a party has standing to pursue an appeal. *Matter of Fondiller,* 707 F.2d 441, 443 (9th Cir. 1983); *see also Tippet v. Umpqua Shopping Center, Inc. (In re Umpqua Shopping Center, Inc.),* 111 B.R. 303, 305 (9th Cir. BAP 1990); *McClellan Fed. Credit Union v. Parker (In re Parker),* 193 B.R. 525, 527 (9th Cir. BAP 1996). Under this test, only parties that are pecuniarily affected by a bankruptcy court's order or judgment have standing to appeal the order. *Fondiller,* 707 F.2d at 442. The party asserting standing must prove that the bankruptcy court's order either diminishes its property, increases its burdens, or detrimentally affects its rights. *See id.* Because Wirs is not a creditor of Debtors' estate nor is he a valid assignee of any claims against Debtors, he does not have a pecuniary interest in this appeal as it relates to the Dismissal Motion. However, because Wirs is jointly and severally liable for the Sanction Requests, he has standing to pursue that portion of the appeal.

### B. The Bankruptcy Court Properly Granted The Dismissal Motion Because Trustee Is Protected By Derived Judicial Immunity And Plaintiffs Offered No Admissible Evidence To Counter This Finding.

In granting the Dismissal Motion, the bankruptcy court held that, as a matter of law, Trustee was protected under the doctrine of derived judicial immunity from the allegations stated in the Gross Negligence Complaint.[15] We agree with the bankruptcy court's conclusion.

 The Supreme Court has held that when bankruptcy trustees act pursuant to

15. Additionally, the bankruptcy court held that Plaintiffs were barred from bringing the action under the doctrines of *res judicata* and collateral estoppel. Because we affirm the bankruptcy court's derived judicial immunity reasoning, we will not address the collateral estoppel/*res judicata* argument raised by the bankruptcy court.

court orders, they are entitled to judicial immunity. *Mosser v. Darrow,* 341 U.S. 267, 274, 71 S.Ct. 680, 683–84, 95 L.Ed. 927 (1951); *see also Lonneker Farms, Inc. v. Klobucher,* 804 F.2d 1096, 1097 (9th Cir.1986) ("a trustee in bankruptcy or an official acting under the authority of the bankruptcy judge, is entitled to derived judicial immunity because he is performing an integral part of the judicial process").[16] Therefore, "a trustee, who obtains court approval for actions under the supervision of the bankruptcy judge, is entitled to derived immunity." *Read v. Duck (In re Jacksen),* 105 B.R. 542, 545 (9th Cir. BAP 1989).[17]

■ However, such derived judicial immunity is contingent upon candid disclosure to the court and the creditors of the facts surrounding the proposed action. *Mosser,* 341 U.S. at 274, 71 S.Ct. at 683–84. Accordingly, a trustee may be held liable for intentional and negligent conduct pertaining to duties placed on him by law. *Read,* 105 B.R. at 544 (citing *Hall v. Perry (In re Cochise College Park, Inc.),* 703 F.2d 1339, 1357 (9th Cir.1983)). A trustee may also be liable for acts that are not taken in good faith. *Leonard v. Vrooman,* 383 F.2d 556, 561 (9th Cir. 1967), *cert. denied,* 390 U.S. 925, 88 S.Ct. 856, 19 L.Ed.2d 985 (1968).

■ The Gross Negligence Complaint solely attacks Trustee's actions in investigating, negotiating, and entering into the CLS Settlement and the Santucci Settlement. Barring dishonesty to the court or bad faith, Trustee is entitled to derived judicial immunity in his actions in reaching and concluding these court approved settlements. *Mosser,* 341 U.S. at 274, 71 S.Ct. at 683–84; *Read,* 105 B.R. at 544.

In addition to an affidavit submitted in support of the Dismissal Motion, Trustee submitted to the court most of the major documents in this adversary and the underlying bankruptcy case. These documents included the reports Trustee submitted in support of the Santucci Settlement and in support of the CLS Settlement,[18] the bankruptcy court's order denying Plaintiffs' application to remove Trustee, the notice of settlements, and the court orders approving the settlements. In the face of this overwhelming evidence, the bankruptcy court held:

> On the immunity issue, I also find that you are immune from this particular lawsuit. These creditors participated in the motions. As I said, in each case I found that the settlements were appropriate. I approved them. And as far as I'm concerned, you have done nothing other than act in compliance with your duties under the Bankruptcy Code, and so there is no basis that I can find under which you have liability for acting in conformance with my orders.

Transcript of Bankruptcy Court Hearing of April 26, 1996 at 6:7–15. Based on all the evidence supplied by Trustee to the bankruptcy court, we agree with the bankruptcy court that Trustee established a prima facie case that he was entitled to judicial immunity.

Under Federal Rule of Civil Procedure ("FRCP") 56(c), made applicable to this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 7056, this is all Trustee was required to do. After the movant for a summary judgment[19] has established a prima facie case based on the facts presented, "the nonmoving party must go beyond the pleadings and, by **its own affidavits** or by the depositions, answers to interrogatories, and admissions on file, come forth with **specific facts** to show that a genuine issue of material fact exists." *Han-*

---

**16.** *See also Boullion v. McClanahan,* 639 F.2d 213, 214 (5th Cir.1981); *Wickstrom v. Ebert,* 585 F.Supp. 924, 934 (E.D.Wis.1984); *Smallwood v. United States,* 358 F.Supp. 398, 404 (E.D.Mo.), *aff'd mem.,* 486 F.2d 1407 (8th Cir.1973).

**17.** *See also* Tiller, *Personal Liability of Trustees and Receivers in Bankruptcy,* 53 Am. Bankr.L.J. 75, 98 (Winter 1978).

**18.** The reports delineate, in painstaking detail, the actions Trustee took in evaluating and investigating the merits of each complaint and potential settlement. For example, Trustee phoned all the parties involved, reviewed appraisal reports, and met with various experts.

**19.** As noted earlier, the parties and the bankruptcy court treated the Dismissal Motion as a motion for summary judgment. *See supra* note 11.

624

*sen,* 7 F.3d at 138 (citing Fed.R.Civ.P. 56) (emphasis added); *see also Fast Freight,* 202 B.R. at 487–88.

Plaintiffs provided no admissible evidence to the bankruptcy court, by declaration or other means, to demonstrate that Trustee had either lied to the court or to the creditors of the estate or acted in bad faith, the only two defenses that would have stripped him of judicial immunity. *See Mosser,* 341 U.S. at 274, 71 S.Ct. at 683–84; *Read,* 105 B.R. at 544; *Leonard,* 383 F.2d at 561. Plaintiffs' papers were filled with self-serving statements about Trustee's motives and mistakes, but there is no evidence to support these accusations.

In light of the entire record before the bankruptcy court at the time of the hearing, we hold that the bankruptcy court was correct in holding as a matter of law that Trustee was protected under the doctrine of derived judicial immunity from the allegations in the Gross Negligence Complaint. The bankruptcy court correctly granted the Dismissal Motion.

## C. The Bankruptcy Court Did Not Err In Sanctioning Plaintiffs.

In *Marsch v. Marsch (In re Marsch),* 36 F.3d 825, 829–30 (9th Cir.1994), the Ninth Circuit addressed the relevant standard to apply to FRBP 9011(a) sanctions in the context of "improper" complaints filed in the bankruptcy court. The Ninth Circuit held:

we accept *Townsend's* basic teaching, which is that frivolousness and improper purpose are not wholly independent considerations but 'will often overlap.' We thus adopt an interpretation of Bankruptcy Rule 9011 that differs somewhat from *Townsend's* interpretation of FRCP 11, but one we believe is more faithful to Rule 9011's language and more consistent with the realities of bankruptcy practice. We conclude that bankruptcy courts must consider both **frivolousness and improper purpose on a sliding scale, where the more compelling the showing as to one**

**element, the less decisive need be the showing as to the other.**

*Marsch,* 36 F.3d at 830 (citing *Townsend v. Holman Consulting Corp.,* 929 F.2d 1358, 1362 (9th Cir.1990) (en banc)) (citation omitted) (footnote omitted) (emphasis added).

■■■ Here, the bankruptcy court believed that the Gross Negligence Complaint was an "improper" complaint; therefore, the sliding scale standard delineated in *Marsch* is directly applicable to this appeal. "Both prongs are measured by an objective standard which requires the Court to consider the reasonableness of the conduct under the circumstances." *In re Boyd,* 143 B.R. 237, 239 (Bankr.C.D.Cal.1992) (citing *Caldwell v. Farris (In re Rainbow Magazine, Inc.),* 136 B.R. 545, 550 (9th Cir. BAP 1992), *aff'd, Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.),* 77 F.3d 278, 281 (9th Cir.1996)).

Plaintiffs had already strenuously objected to both the Santucci Settlement and the CLS Settlement. In those objections, Plaintiffs had advanced the same argument that they raised in the Gross Negligence Complaint; namely that Trustee was mishandling the estate by entering into these two settlements. The Gross Negligence Complaint was little more than a rehashing of Plaintiffs' two prior objections to the settlements.

Plaintiffs were well aware that the bankruptcy court had approved the CLS Settlement and the Santucci Settlement. Plaintiffs did not come forward with any evidence of misconduct or bad faith by Trustee. Such evidence was critical for Plaintiffs to succeed in overcoming Trustee's judicial immunity defense. Additionally, given the relationship between Plaintiffs and Debtors, the bankruptcy court had good reason to suspect that the Gross Negligence Complaint was filed for an improper purpose.

It is clear from the transcript that the bankruptcy court considered the Gross Negligence Complaint both highly frivolous [20] and

**20.** The word "frivolous" does not appear in the text of FRBP 9011(a); "rather, it is a shorthand that this court has used to denote a filing that is both baseless and made without a reasonable

and competent inquiry." *Townsend,* 929 F.2d at 1362.

Although *Townsend* dealt with FRCP 11, FRCP 11 cases are often looked at for guidance in

filed for an improper purpose. After thoroughly reviewing the Gross Negligence Complaint and the record before the bankruptcy court, we hold that the bankruptcy court did not abuse its discretion in sanctioning Plaintiffs.

Plaintiffs also assert several due process arguments concerning the bankruptcy court's imposition of sanctions. These arguments are meritless. Trustee filed and served his Sanctions Request with the Dismissal Motion. This was on April 3, 1996, twenty-three days before the hearing. The Sanctions Request put Plaintiffs on adequate notice that Trustee would be seeking sanctions under FRBP 9011(b) for the filing of an improper complaint. Under Ninth Circuit law, due process only requires that the sanctioned party received notice that the court was considering sanctions and had an opportunity to be heard in opposition.[21] *Hudson v. Moore Business Forms,* 898 F.2d 684, 686 (9th Cir.1990); *Pan–Pacific and Low Ball Cable Television Co. v. Pacific Union Co.,* 987 F.2d 594, 597 (9th Cir.1993). Trustee gave Plaintiffs plenty of notice that the court would be considering sanctions at this hearing and Plaintiffs had the opportunity to attend the hearing and oppose the sanctions if they wanted to be heard. Accordingly, the sanctions imposed by the bankruptcy court did not violate Plaintiffs' due process rights.

### V. CONCLUSION

Wirs is not a creditor of Debtors' estate; therefore, he does not have standing to pursue this appeal as it relates to the bankruptcy court's granting of the Dismissal Motion. However, because he is jointly and severally liable for the sanctions the bankruptcy court issued, he has standing to pursue that portion of this appeal.

The Gross Negligence Complaint essentially attacks Trustee for investigating, negotiating, and entering into the Santucci Settlement and the CLS Settlement. The bankruptcy court correctly granted the Dismissal Motion because Trustee established a prima facie case that he was protected under the doctrine of derived judicial immunity. Plaintiffs offered no admissible evidence to except Trustee's actions from the defense of derived judicial immunity.

Additionally, the bankruptcy court did not err in granting the Sanctions Request and did not violate Plaintiffs' due process rights in awarding sanctions.

Accordingly, we **AFFIRM** the orders of the bankruptcy court granting the Dismissal Motion and Sanctions Request and denying the Reconsideration Motion.

interpreting FRBP 9011(a). *In re Grantham Brothers,* 922 F.2d 1438, 1441 (9th Cir.), *cert. denied,* 502 U.S. 826, 112 S.Ct. 94, 116 L.Ed.2d 66 (1991); *Mortgage Mart, Inc. v. Rechnitzer (In re Chisum),* 847 F.2d 597, 599 (9th Cir.) (citing *Shmavonian v. Lewis (In re Lewis),* 79 B.R. 893, 895 (9th Cir. BAP 1987)), *cert. denied,* 488 U.S. 892, 109 S.Ct. 228, 102 L.Ed.2d 218 (1988).

21. There is no requirement under Ninth Circuit law that any hearing on sanctions must be separate from the hearing on the underlying motion. *See Pan–Pacific and Low Ball Cable,* 987 F.2d at 597.