In re SHILO INN, DIAMOND BAR, LLC, Shilo Inn, Oakhurst, LLC, Shilo Inn, Delano, LLC, Shilo Inn, Salt Lake City, LLC, Shilo Inn, Richland, LLC, Shilo Inn, Portland/205, LLC, Shilo Inn, Elko, LLC, Shilo Inn, Seaside Oceanfront, LLC, Shilo Inn, Spokane, LLC, Shilo Inn, Beaverton, LLC, Shilo Inn, Bend, LLC, Shilo Inn, Boise Riverside, LLC, Shilo Inn, Casper, LLC, Shilo Inn, Coeur d'Alene, LLC, Shilo Inn, Grants Pass, LLC, Shilo Inn, Idaho Falls, LLC, Shilo Inn, Lincoln City, LLC, Shilo Inn, Nampa Blvd., LLC, Shilo Inn, Nampa Suites, LLC, Shilo Inn, Newport, LLC, Shilo Inn, Salem, LLC, Shilo Inn, Tacoma, LLC, Shilo Inn, The Dalles, LLC, Shilo Inn, Tillamook, LLC, Shilo Inn, Warrenton, LLC, Shilo Inn, Washington Square, LLC, Shilo Inn, Yuma, LLC, Debtors.

Nos. 302–32435–ELP11, 302–32436–ELP11, 302–32437–ELP11, 302–32438–ELP11, 302–32681–ELP11, 302–32682–ELP11, 302–32982–ELP11, 302–32987–ELP11, 302–32988–ELP11, 302–33026–ELP11 to 302–33043–ELP11.

United States Bankruptcy Court,
D. Oregon.

Oct. 18, 2002.

Brad T. Summers, Portland, OR, for Shilo Inn, Diamond Bar, LLC.

Charles R. Gibbs, Dallas, TX, for Criimi Mae Services Limited Partnership, on behalf of LaSalle Bank National Association and State Street Bank and Trust Company.

## MEMORANDUM OPINION

ELIZABETH L. PERRIS, Bankruptcy Judge.

Debtors have filed a Motion for Order Determining Procedures for Voting by Beneficial Holders of Trust Indebtedness. They seek, pursuant to Bankruptcy Rule 3017(e),[1] to have the court determine pro-

cedures for transmitting debtors' proposed plan, disclosure statement and ballots to the holders of certificates of interest in trusts holding loans that include loans to debtors. The issue is whether the special servicer of the loan pools may vote the trusts' claims, or whether those claims must be voted by the certificate holders. For the reasons explained below, I conclude that the special servicer may vote the claims, and therefore will deny the motion.

## FACTS

Debtors are 27 limited liability companies (LLCs), each of which owns real property on which a Shilo Inn hotel is operated. Prepetition, debtors obtained secured loans in an amount aggregating approximately $159,000,000. Those loans are now included in pools of loans held in three trusts (Trusts 1–3). LaSalle Bank National Association is the trustee for Trusts 1 and 2; State Street Bank and Trust Company is the trustee for Trust 3. The trusts then sold the beneficial interests in the pools of loans, including loans to debtors and other entities, to investors who received certificates evidencing their interests. The certificates are divided into different classes, each of which has different rights with regard to distributions from amounts collected on the pooled loans. This arrangement has been referred to by the parties as "securitized loans." Criimi Mae Services Limited Partnership (Criimi Mae) is the special servicer for the pools of loans held by all three trusts.

Debtors listed their debts to the trusts in their bankruptcy schedules. Criimi Mae asserts that, under the Pooling and Servicing Agreements (PSAs) that govern its actions as special servicer, it is entitled

---

**1.** Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the

Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

to vote on behalf of the trusts on debtors' proposed chapter 11 plan of reorganization.[2] Debtors assert that provisions of the PSAs restrict Criimi Mae's ability to vote in favor of the plan, and therefore the beneficial holders of the trust indebtedness must be able to vote on the plan.

## DISCUSSION

### 1. *Standing*

At the initial hearing on this motion, which was held at the same time as the disclosure statement hearing, I asked the parties to provide the court with further briefing with regard to the issues raised by the motion. Shilo Management Company (SMC) filed a letter and exhibits, providing argument and evidence for the position that the certificate holders are the appropriate parties to vote on debtors' plan.

The trusts object to my consideration of SMC's submissions, arguing that SMC is not a party to this motion and was not asked to provide briefing on the issues raised by the motion.

■■■■ The parties to this motion are debtors and the trusts, represented by Criimi Mae. SMC is not a party.[3] It has no direct stake in the outcome of the mo-

tion. In order to have standing, a person must be "aggrieved" by the bankruptcy court's action. *See In re CFLC, Inc.*, 89 F.3d 673, 675 (9th Cir.1996); *In re Commercial Western Finance Corp.*, 761 F.2d 1329, 1334 (9th Cir.1985); *In re Fondiller*, 707 F.2d 441, 442–43 (9th Cir.1983). A person is aggrieved if the person is "directly and adversely affected pecuniarily by an order of the bankruptcy court." *Fondiller*, 707 F.2d at 442. The party asserting standing must show that the bankruptcy court's order either diminishes its property, increases its burdens, or detrimentally affects its rights. *Fondiller*, 707 F.2d at 442; *In re Giordano*, 212 B.R. 617 (9th Cir. BAP 1997).

■■■ SMC is a third party to the voting rights dispute. Its interests will not be directly affected by a determination of whether Criimi Mae or the certificate holders may vote the claims of the trusts against debtors. Therefore, I will sustain the trusts' objection and will not consider SMC's submissions.

### 2. *Voting rights* [4]

Bankruptcy Code § 1126(a) provides that "[t]he holder of a claim or interest

---

**2.** There are three PSAs for the loans on which debtors are obligated, one PSA for each trust. At the trial in the adversary proceeding *Shilo Inn, Diamond Bar, LLC v. LaSalle Bank National Assoc. et al.*, Adv. No. 02–3180 (Bankr. D.Or.), I admitted the three PSAs into evidence as Exhibits 681, 682 and 683. The three PSAs are substantially similar, although the specific section references are not identical. Both parties refer to and rely on the PSAs, therefore I will take judicial notice of them *for purposes of this motion. See* Fed. R.Evid. 201. In deciding this motion, I will primarily rely on and refer to Exhibit 681, which is the December 1, 1997 PSA for Commercial Mortgage Pass–Through Certificates Series 1997–ML1 (Trust 1).

**3.** Counsel for SMC appeared telephonically at the disclosure statement hearing. In re-

sponse to a comment offered by counsel for SMC on this motion, I suggested that counsel might be able to assist debtors in preparing their brief. However, I did not ask SMC to submit its own brief and did not intend to give SMC standing to argue this motion.

**4.** Debtors filed their motion pursuant to Rule 3017(e), which allows the court to enter an order that "provides for transmission of the plan and disclosure statement together with associated materials to creditors, equity security holders and, in a chapter 11 case, the United States trustee." 9 Lawrence P. King, *Collier on Bankruptcy* ¶ 3017.02[1] (15th ed. Rev.2001). The trusts argue that the rule does not apply because the creditors and equity security holders to which the rule refers are creditors and equity holders of the *debtor,*

allowed under section 502 of this title may accept or reject a plan." Claims are deemed allowed unless a party in interest objects. § 502(a). In this case, the trusts filed proofs of claim in each case and no objections have been filed. Therefore, pursuant to § 502(a), those claims are deemed allowed.

█ Only a holder of a claim may vote to accept or reject a plan. Debtors argue that the certificate holders are the beneficial owners of the loans to debtors, and therefore are the proper parties to vote. They compare the relationship between the certificate holders and the trusts to that between bondholders and an indenture trustee. According to debtors, because bondholders are entitled to vote on a plan in a reorganization of the entity that issued the bonds, the certificate holders in this case should be able to vote on debtors' proposed plan of reorganization. Debtors also argue that, as a practical matter, the PSAs require Criimi Mae to oppose the plan on behalf of the trusts.[5] Because Criimi Mae is contractually bound to vote to reject debtors' plan as proposed, debtors argue that the certificate holders should be able to vote, because they are not similarly constrained.

The trusts argue that indenture trustees and bond holders are very different from REMIC[6] trusts and certificate holders, and that the trusts, not the certificate holders, hold the claims against debtors. They point to provisions in the PSAs that limit the rights of certificate holders to control the actions of the special servicer in its actions on behalf of the trust.

█ I conclude that the claims belong to the trusts, not to the individual certificate holders, and therefore Criimi Mae as agent for the trusts may vote the trusts' claims. First and foremost, the certificate holders in this case hold certificates evidencing a beneficial interest in the trust funds. The trust assets include loans on which debtors are obligated. Debtors are not obligated to the certificate holders. Likewise, the certificate holders do not have any direct interest in the obligations of debtors. Their interest is in the assets of the trusts. The trusts are creditors of the Shilo Inn debtors.

Second, there are differences in structure between corporate bond issuance and the securitization of assets that results in issuance of certificates to investors.

Corporations, like other forms of business, frequently raise capital through debt financing. Debt represents borrowed capital which must be repaid. In

---

not creditors and equity security holders of *creditors* of the debtor. Debtors do not claim that Rule 3017(e) applies if the certificate holders are not entitled to vote on the plan; the purpose of providing them with the plan and disclosure statement and other associated materials is to inform their votes on the plan. The issue distills to whether the certificate holders rather than Criimi Mae are entitled to vote the trusts' claims. Debtors do not dispute Criimi Mae's authority to act on behalf of the trusts; they argue rather that the certificate holders are the proper entities to vote the claims, not the trustees or an agent of the trustees. Therefore, I will address the underlying issue of whether the certificate holders are entitled to vote on the plan.

5. As I explain in more detail below, the PSAs limit Criimi Mae's discretion in servicing and administering the loans. For example, Criimi Mae as special servicer may not grant an extension of the maturity of a loan for more than a year or modify a monetary term of a mortgage loan, or accept substitute or additional collateral, without the approval of the controlling class representative. *See* Exh. 681 at § 3.27.

6. The trusts in this case are real estate mortgage investment conduits, or REMICs. *See* 26 U.S.C. § 860D (defining REMIC).

essence, bonds or debentures are promissory notes but contain more elaborate provisions than ordinary commercial loans.... In order to borrow funds from a large number of investors, corporations and other public issuers contract with a third party to administer a bond issue. This third party acts as the indenture trustee.

3 Thomas L. Hazen, *The Law of Securities Regulation* § 19.1 (4th ed.2002)(footnote omitted). Thus, the holders of the bonds or debentures are like holders of promissory notes evidencing debt of the issuer corporation.

Where the issuer of corporate bonds becomes a debtor in bankruptcy, Bankruptcy Rule 3003(c)(5) authorizes an indenture trustee to file a proof of claim on behalf of all the bond holders. However, "the indenture trustee is not the holder of the claim and, accordingly, is not entitled to accept or reject a plan." 4 William L. Norton, Jr., *Norton Bankruptcy Law and Practice 2d* § 91.19 (1997). The bond holders are entitled to vote their own claim or interest. Lawrence P. King, *Collier on Bankruptcy* ¶ 1126.02[2] (15th ed. Rev. 2001).

A securitization of assets is a different financing structure.

A structured financing involving the issuance of asset-backed securities is a hybrid transaction; it is a cross between a traditional secured bank credit facility and a securities offering. Rather than borrowing money directly from a bank or issuing its own securities to investors, the company causes a separate entity to issue securities backed by the company's assets.

Although the details of structured financings vary greatly, the fundamentals of most transactions are the same. A company that generates receivables or loans (the originator or originating company) transfers a pool of these assets to a special purpose vehicle—usually a corporation or a grantor trust. The special purpose vehicle then issues securities, either debt or equity, backed by the receivables or loans to investors. The monies that the vehicle receives from the investors are used by the special purpose vehicle to pay the originator for the assets. The cash generated by the assets is used to make principal and interest payments to the investors.

Stephen I. Glover, "Structured Finance Goes Chapter 11: Asset Securitization By Reorganization Companies," 47 Bus. Law. 611, 614 (Feb.1992). In an asset securitization, then, the special purpose vehicle, not the company that generates the receivables or loans, issues the securities and has the relationship with the investors. The investors' right to payment comes from cash generated by the pooled assets, not from the general funds of the originator of the assets.

That the certificate holders do not have direct rights against the obligors on the pooled loans makes sense in light of the complications that would arise if they had such rights. Asset pools can contain a large number of assets. For example, the pool of loans underlying Trust 3 (Mortgage Pass–Through Certificates Series 1996–C2) contains 300 loans, only four of which are debtors' loans. Exhibit 683 at p. 208. Because it would be unwieldy for each of the certificate holders to have individual rights against each of the obligors on the 300 loans, the PSA provides the mechanism for collection efforts, if needed, for the collective benefit of the certificate holders.[7]

---

7. Also, as the trusts point out in their brief, the different trust classes of certificate holders have widely disparate economic interests and would likely vote to protect those interests.

Thus, in a corporate bond issuance, the investor is a creditor of the corporation that issued the bonds or debentures, and has a right to payment from the corporation. In contrast, in an asset securitization, the investors' relationship is with the special purpose vehicle to which the originator of the assets (here, the banks that took the assignments of debtors' loans from the original lenders) has transferred those assets, and the investors' right to payment comes from the cash generated by the transferred assets, not from the originator of the assets itself.

Finally, the PSAs in this case do not provide the certificate holders a right to vote on the reorganization plan of obligors on the loans that constitute the asset pool in which the certificate holders hold an interest. The certificate holders have certain limited voting rights, but only as specifically provided in the PSAs. Exh. 681 at § 10.2. Those rights include the right to vote to terminate the special servicer on default by the servicer, to waive defaults by the servicer, to remove the trustee for the trust and appoint a successor trustee, and to make certain limited modifications to the PSA. *Id.* at §§ 7.1; 7.5; 8.7; 10.7. A representative of the controlling class of certificate holders may advise the special servicer with regard to certain actions, and the special servicer may not take certain actions without the approval of the controlling class representative, including modifying a term of a mortgage loan other than the extension of the maturity date for less than one year, and selling a defaulted loan or accepting substitute or additional collateral for a mortgage loan. *Id.* at § 3.27. The PSAs give the certificate holders rights to advise the special servicer and to

enforce their rights against the special servicer and the trustee. However, they do not give the certificate holders the right to enforce the pooled mortgage loans on their own unless the trustee has been requested to do so and has refused. *Id.* at § 10.2. That has not happened in this case; here, the trustee is pursuing enforcement on behalf of the certificate holders. Thus, the certificate holders do not have any rights to vote with regard to any proposed modifications to the loans that are contained in debtors' proposed plan of reorganization.

Debtors argue that the certificate holders must be allowed to vote the trusts' claims because Criimi Mae as special servicer is obligated under the PSAs to reject debtors' proposed plan. The PSAs give Criimi Mae as special servicer broad authority "to do or cause to be done any and all things in connection with such servicing and administration of the Group 2 Mortgage Loans which they may deem necessary or desirable," subject to certain servicing standards. *E.g.*, Exh. 681 at ¶ 3.2(a). The PSAs restrict that authority in certain respects. For example, after a default in the payment of a balloon payment on a Mortgage Loan, Criimi Mae is not permitted to grant an extension that would extend the maturity date of the loan beyond December 15, 2027. *Id.* at § 3.12(a). The special servicer is allowed to waive due on sale clauses and to enter into assumption agreements, but if it does so, it "shall not agree to modify, waive or amend, and no assumption or substitution agreement entered into pursuant to Section 3.11(a) shall contain any terms that are different from, any term of any Group 2 Mortgage Loan or the related Note or Mortgage." *Id.* at § 3.11(d). The special

Letter dated October 6, 2002 from Charles R. Gibbs at pp. 10–11. It is not clear how votes of certificate holders of the various trust classes would be calculated or weighed be-

tween trust classes in determining the vote of the single bankruptcy plan class for each mortgage.

servicer can take certain actions only if the controlling class representative has approved such action in writing, including foreclosing on defaulted mortgage loans, modifying a monetary term of the mortgage loan, "other than a modification consisting of the extension of the maturity date of such a Mortgage Loan for one year or less," selling a defaulted mortgage loan, accepting substitute or additional collateral for a mortgage loan, and waiving a due on sale clause or accepting an assumption agreement releasing a borrower from liability on a mortgage loan. *Id.* at § 3.27.

Even assuming that the restrictions contained in the PSAs effectively preclude Criimi Mae from voting in favor of debtors' proposed plan of reorganization, that fact does not lead to the conclusion that the certificate holders must therefore be allowed to vote the trusts' claims. The parties by contract have set out the rights and obligations of Criimi Mae as special servicer. If the parties agreed that the special servicer, as the representative of the trusts' interests in the pooled assets, can not take certain actions in connection with the reorganization of an obligor on some of the assets in the pool, I know of no legal theory under which that agreement should not be enforceable between the parties to the PSAs. The agreement does not restrict Criimi Mae from voting on the proposed plan; it merely restricts how Criimi Mae may cast that vote. That is a circumstance debtors may take into consideration in drafting their proposed plan. If debtors cannot, or choose not to, propose a plan containing provisions within the limits of what Criimi Mae may accept, the plan may nonetheless be confirmable through "cramdown" under § 1129.

## CONCLUSION

The certificate holders are not entitled to vote on debtors' proposed plan of reor-

ganization. Therefore, there is no need to develop procedures for the transmission of the disclosure statement and plan to the certificate holders pursuant to Bankruptcy Rule 3017(e). I will deny debtors' motion. Counsel for the trusts should submit an order that denies the Motion for Order Determining Procedures for Voting by Beneficial Holders of Trust Indebtedness.